IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:16-CV-01035 |
| | § | RWS-JDL |
| | § | |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| FUJITSU AMERICA, INC. and | § | |
| QUANTUM CORPORATION, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Quantum Corporation ("Quantum") and Fujitsu America, Inc.'s ("FAI") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404. (Doc. No. 33.) Plaintiff Realtime Data LLC ("Realtime") has filed an Opposition (Doc. No. 39), Defendants have filed a Reply (Doc. No. 40), and Realtime has filed a Sur-Reply (Doc. No. 41).

After consideration of the parties' arguments and for the reasons stated herein, the Court **GRANTS** Defendants' Motion to Transfer Venue. (Doc. No. 33.)

### I.    BACKGROUND

On July 21, 2016, Realtime sued Defendants for patent infringement. (Doc. No. 1.) Earlier that year, in February and June of 2016, Realtime filed four other cases also alleging infringement of a number of overlapping patents. *See Realtime Data LLC v. Hewlett Packard Enterprise Co.*, No. 6:16-cv-86 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Savvis Comm'ns Corp.*, No. 6:16-cv-87 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Dell, Inc.*, No. 6:16-cv-00089 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Rackspace US, Inc.*, No. 6:16-

cv-00961 (E.D. Tex. Jun. 29, 2016). Each of these matters was also assigned to Judge Schroeder and referred to the undersigned.

In its Complaint, Realtime alleges that Defendants have entered into a "commercial partnership" where Quantum supplies its DXi deduplication software technology to FAI for incorporation into FAI's products, including FAI's ETERNUS CS800 product. (*Id.* at ¶ 4.) In its Answer to the Complaint, FAI denies that it has a commercial partnership with Quantum, but admits that its ETERNUS CS800 product uses Quantum's DXi deduplication software. (Doc. No. 24, ¶4.) In Quantum's Answer, Quantum admits "that it has licensed one or more versions of Quantum DXi software to [FAI]" and denies Realtime's remaining allegations. (Doc. No. 28, ¶4.)

Realtime is a New York limited liability company with its principal place of business located at 116 Croton Lake Road, Katonah, New York 10536. (Doc. No. 1, ¶ 1.) Realtime also maintains offices in Tyler, Texas and Plano, Texas, where Realtime purports to keep substantially all of its documents relevant to this case. (*Id.*; Doc. No.39-2 ("Tashjian Decl."), ¶ 5.) Realtime asserts that one of its relevant witnesses is located in this District and four are located in the state of New York. (Tashjian Decl., ¶¶7, 9.)

Quantum is a Delaware Corporation with its principal place of business located in San Jose, California. (Doc. No. 1, ¶3; Doc. No. 28, ¶3.) Quantum asserts that "[s]ubstantial portions of the technology accused of infringement in this case were developed in San Jose." (Doc. No. 34, ("Mintz Decl."), ¶2.) Specifically, Quantum asserts that the "research, design and development activities for the accused products in this litigation are split between San Jose, California; Irvine, California; and Adelaide, Australia." (*Id.* at 4.) Quantum also asserts that its marketing and sales activities are "primarily directed" from San Jose, California. (*Id.*) Quantum

asserts that it has five potential witnesses located in San Jose, three in Irvine, and two in Australia. (*Id.* at ¶¶5-8.) It also asserts that it has three former employees with relevant knowledge who work for competitors in the Bay Area. (*Id.* at ¶¶5, 10.) Quantum states that source code production for this litigation will likely need to be facilitated by one of its engineers located in Irvine, California. (*Id.* at ¶9.)

FAI is a California Corporation with its principal place of business located in Sunnyvale, California. (Doc. No. 24, ¶2.) FAI asserts that the majority of the design, manufacturing, and testing of FAI's accused products occurs outside of the United States, but FAI maintains an engineering department in Sunnyvale, California to address customer requests and "because the United States is an important market." (Doc. No. 33-15 ("Owens Decl."), ¶3.) FAI further asserts that the finance and marketing of the ETERNUS products are directed from Sunnyvale, California and that documents related to those efforts are maintained in Sunnyvale. (Doc. No. 33-16 ("Lam Decl."), ¶¶3, 6; Doc. No. 33-14 ("Kalra Decl."), ¶5, 6.) FAI does not specifically identify any witnesses with relevant information. However, two of its four declarants, each of whom is located in Sunnyvale, California, state that to the extent their knowledge of the ETERNUS products is relevant, they would be willing to testify. (Kalra Decl., ¶8; Owens Decl., ¶8.)

In their Motion, Defendants state that FAI's accused ETERNUS products that are sold in the U.S. either do not include deduplication technology or use Quantum's deduplication technology. (Doc. No. 33, at 2; *see also* Doc. No. 35-1 ("Valiante Decl."), ¶7; Owens Decl., ¶7.) Defendants also note that the "substantive infringement allegations in the Complaint are directed to Quantum's data deduplication functionality." (Doc. No. 33, at 2 (citing Doc. No. 1, ¶¶11-55).) Thus, according to Defendants, "this case is really about Quantum's data deduplication

technology and the location of Quantum's documents and witnesses should be given more weight in the transfer analysis than FAI's." (*Id.* at 2.)

## II. APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from

court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## III. DISCUSSION

Realtime does not dispute that venue would be proper in the Northern District of California. The Court thus proceeds to analyze the private and public interest factors under §1404(a).

### A. Private Interest Factors

#### 1. The relative ease of access to sources of proof

As Defendants note, this factor remains a part of the transfer analysis despite technological advances that have lightened the inconvenience of transporting large amounts of documents. *Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance evidence must be transported from its existing location to the trial venue. *See id.* The accused patent infringer is presumed to have the greater volume of documents relevant to the litigation such that more weight is placed on the location of the accused infringer's documents. *See, e.g., in re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *Volkswagen II*, 545 F.3d at 314-15. Documents that have been moved to a particular venue in anticipation of litigation are not considered in this analysis. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).

To meet its burden under this factor, Defendants must identify their sources of proof with some specificity such that the Court may determine whether transfer to a particular district will increase the convenience of the parties. *J2 Global Comm'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009); *see also Invitrogen v. Gen.*

*Elec. Co.*, No. 6:08-cv-113, 2009 WL 331889, at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties.")

Realtime does not dispute Defendants' contention that Quantum's deduplication technology is the main focus of Realtime's case, and thus Quantum's documents and witnesses should be given more weight. (*See* Doc. No. 33, at 2.) In its declaration, Quantum states that the research, design, and development of the accused products are split between San Jose, California; Irvine, California; and Adelaide, Australia and relevant documents "concerning these aspects of the accused products will largely be found in these respective offices." (Mintz Decl., ¶4.) Quantum further states that its marketing and sales activities are directed from San Jose, California and thus relevant documents will "largely be found" in that office. (*Id.*) Quantum states that "[i]f the production of source code becomes necessary in this action, it is likely that one of the engineers who work in Irvine, California will be needed to assist with the process of selecting the source code and making it available for production in a secure, reviewable format." (*Id.* at ¶9.) Quantum states that it would be more convenient to have a source code inspection take place in San Jose than in this District because its Irvine employee "would be able to conduct business in the San Jose office in conjunction with the litigation-related trip." (*Id.*)

FAI has submitted four declarations in support of Defendants' Motion. Mr. Kalra, FAI's Vice President of Finance and Corporate Controller, states that the financial system of record for the accused products is located in Sunnyvale, California. (Kalra Decl., ¶6.) In addition, Mr. Kalra states that his team "maintains some hard copy documents, also located in Sunnyvale, California." (*Id.*) Mr. Owens, FAI's Senior Director of Engineering for Enterprise Products and

Solutions, states that the design, manufacturing and testing of the ETERNUS products is performed outside the United States. (Owens Decl., ¶3.) Mr. Owens states that FAI's engineering department in the United States "maintains some electronic and hard copy documents relating to the ETERNUS line of storage systems. These documents are located in Sunnyvale." (*Id.* at ¶6.) Mr. Lam, Vice President of Enterprise Business and Strategy for Fujitsu Technology and Business of America, states that information relating to FAI's U.S. marketing "is contained in computer databases that reside in our multi-building campus in Sunnyvale." (Lam Decl., ¶6.) Mr. Lam states that his team also maintains hard copy documents relating to marketing of the accused products in Sunnyvale. (*Id.*) Mr. Lam notes that he also oversees field System Engineers, two of whom are based in Texas, but "[e]xcept for the personal records that might be maintained by the two field System Engineers based in Texas," marketing documents relating to the field teams' work are "maintained" in Sunnyvale. (*Id.* at ¶¶7-8.) Mr. Valiante, FAI's Vice President of Sales and Channels, likewise states that "much of FAI's information relating to U.S. sales is contained in computer databases which reside in our multi-building campus in Sunnyvale." (Valiante Decl., ¶6.) Mr. Valiante states that FAI also maintains hard copy documents relating to sales in Sunnyvale. (*Id.*) Mr. Valiante oversees two sales persons located in this District but states that "[e]xcept for the personal records that might be maintained by the two sales persons based in the Eastern District of Texas, [sales] documents are not located in the Eastern District of Texas." (*Id.*)

Realtime emphasizes that all of its relevant documents are housed in this district. (Tashjian Decl., ¶5.) Realtime argues that Defendants' electronic documents minimize any inconvenience on the parties to transport documents to this District. (Doc. No. 39, at 6.) Realtime also argues that FAI has not clearly identified its documents and also "clearly has at

7

least some relevant documents in Texas." (*Id.* at 7.) Realtime argues that many of Quantum's sources of proof are located outside of the Northern District of California in either Irvine or Australia. (*Id.*) Realtime further notes that "there is no requirement that source code production must occur physically in the district where this case is pending" and is thus irrelevant to the analysis. (*Id.* at 7-8.)

Although Realtime's relevant documents and evidence are housed in this district, the location of Realtime's documents and witnesses is afforded less weight than the location of Defendants' documents and witnesses. *See Genentech*, 566 F.3d at 1345 ("[T]he bulk of the relevant evidence usually comes from the accused infringer.") On the other hand, Quantum has indicated that many of its relevant categories of documents are housed in San Jose or Irvine, California. Likewise, FAI has indicated that to the extent it has documents located in the United States, almost all of its relevant documents are located in Sunnyvale. The fact that some of Defendants' sources of proof are located in Australia or elsewhere overseas does not weigh heavily in the Court's analysis because that evidence will need to be transported regardless of whether the case is transferred or remains in this district. *Id.* at 1346. Meanwhile, the burden of transporting documents from Quantum's Irvine office would be significantly lighter than would be if the case were to proceed in this district. This factor weighs in favor of transfer.

### 2. The availability of compulsory process

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See Volkswagen II*, 545 F.3d at 316. The Court gives more weight to specifically-identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*,

No. 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010); *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Quantum identifies three former employee witnesses who reside in the Northern District of California: Mr. Jeffrey Tofano, Quantum's former Chief Technology Officer; Mr. Brian DeForest, a former Quantum engineering manager; and Mr. Jim Kahn, a former Quantum software engineer. (Mintz Decl., ¶¶10-11.) Quantum states that Mr. Tofano led Quantum's advanced development team for five years and was responsible for the development of Quantum's accused product. (*Id.* at ¶10.) Meanwhile, Mr. DeForest and Mr. Kahn worked on the development of the accused product from 2011 through 2014 and "may have information concerning the accused instrumentalities' functionality during that time that current employees may not possess." (*Id.* at ¶11.) Quantum notes that each of these individuals is now employed by a Quantum competitor and thus Quantum believes that they would not "voluntarily appear at the trial in this matter, especially if trial is held in a remote location." (*Id.* at ¶¶10-11.) Defendants also identify several authors of prior art patents and publications who reside in the San Francisco Bay Area. (Doc. No. 33, Exs. A-L.) Defendants note that the patents and publications written by these authors are highly relevant to their claims and defenses. (*See* Doc. No. 33, at 6-7.) Neither FAI nor Realtime identify any additional potential third party witnesses. Realtime argues that "Defendants fail to show that any of these alleged third-party witnesses have any unique knowledge of relevant facts not already held by party-controlled witnesses." (Doc. No. 39, at 8.) Realtime also asserts that Mr. DeForest and Mr. Kahn have duplicative knowledge. (*Id.*) Realtime also challenges Quantum's assertion that these two witnesses would be hostile, stating that their current employer "is *not* a competitor with respect to the products accused in this case." (*Id.* at 8-9 (emphasis in original).) Realtime argues that Defendants'

9

alleged prior art witnesses should not be considered in the analysis. (*Id.*) Realtime also emphasizes that witnesses can easily appear at trial via videotaped deposition. (*Id.* at 9.) Realtime argues that Defendants fail to demonstrate the likelihood of their identified third party witnesses actually testifying at trial. (*Id.* at 10.)

Although Quantum does not explicitly say that it plans to call its three proposed third-party witnesses at trial, it has identified the nature of the information these individuals possess and explained why they might serve as important witnesses in this matter. Further, Quantum has indicated that it believes these witnesses may be hostile because they work for Quantum competitors. Realtime's argument that two of the witnesses would not be hostile because their current employer is not a competitor of Quantum specifically with respect to the accused products draws too thin of a distinction. Realtime has not provided any other argument or evidence to rebut Quantum's understanding that these witnesses are hostile This identification enables the Court to give proper weight to each of these witnesses. The Court is particularly persuaded that Mr. Tofano, Quantum's former Chief Technical Officer, may have important knowledge related to this case given that, according to Quantum's declarant Ms. Mintz, he "was responsible for the development of the DXi product." (Mintz Decl., ¶10.)

With respect to Defendant's identified prior art inventors, as this court has previously noted, "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs. LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *8 n. 13 (E.D. Tex. Mar. 21, 2013). Because Defendants have not specifically stated whether they intend to depose some or all of these witnesses, let alone whether they are expected to be called at trial, the Court does not weigh them in the convenience analysis.

On the other side of the scale, Realtime has not identified any non-party witnesses. While the Court recognizes Realtime's suggestion of playing videotaped depositions at trial may be a viable option under Rule 45, such a suggestion does not address the potential value to be added by having a witness testify in person at trial. As in previous cases, the Court will not speculate as to whether the videotaped testimony of any of Defendants' proposed witnesses would be sufficient if played at trial in comparison to live testimony.

Given Defendants' representation—unchallenged by Realtime—that Quantum's technology will be the focal point of this action, the Court is not concerned that FAI has not identified any additional potential third party witnesses on Defendants' side of the scale. Weighing Quantum's three former employees located in the Northern District of California against Realtime's zero witnesses within this Court's subpoena power, this factor weighs in favor of transfer.

### 3. The cost of attendance for willing witnesses

This factor gives broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account. *See id*.

Quantum identifies five San Jose-based employees, three Irvine-based employees, and two Australia-based employees as potential witnesses with knowledge relevant to this case. (Mintz Decl., ¶¶6-8.) Quantum admits that it has a small office in Richardson, Texas, but states that "its employees do not work on deduplication or the line of products that appears to be accused in the Complaint in." (*Id.* at ¶3.) FAI does not specifically identify any willing witnesses, although two of its declarants state that to the extent the operation or sales of FAI's ETERNUS products are "relevant to this case, I or others . . . might be potential witnesses at

trial." (Kalra Decl., ¶8; Owens Decl., ¶8.) Each of FAI's declarants note that they are located in Sunnyvale, much closer to courthouses in the Northern District of California than to the courthouse in this district. (*Id.*; *see also* Lam Decl., ¶9; Valiante Decl., ¶8.) FAI acknowledges that it has an office in the Dallas area; that two members of the Fujitsu Technology and Business of America, Inc. field System Engineering team are located in Dallas and Houston, respectively; and that two sales representatives are located in this District. (Lam Decl., ¶7; Valiante Decl., ¶3, 5.) FAI does not state in its declaration whether or not the two field system engineers or two sales representatives might have knowledge relevant to this matter. (*See generally,* Lam Decl.; Valiante Decl.) FAI does note that it does not believe that "any sales employees in [the Dallas office] would have any unique information regarding the ETERNUS line of storage systems." (Kalra Decl., ¶7.) Further, Defendants assert in their motion that "none of FAI's witnesses or documents that are likely to have unique discoverable information are located within the Eastern District of Texas." (Doc. No. 33, at 9.)

Realtime argues that since FAI has not provided full information for the four Texas employees it has identified, "Plaintiff—and this Court—can only assume that they do have relevant knowledge." (Doc. No. 39, at 4.) Realtime also asserts that FAI has a second office in Texas, and asserts that there are "numerous other employees in Texas who appear to have relevant information regarding the accused products." (*Id.*) With respect to Quantum's witnesses, Realtime argues that the Australian-based witnesses should not weigh in the transfer analysis because they will need to travel a significant distance no matter where they testify. (*Id.* at 5 (citing *Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009)).) Realtime further argues that Quantum's California witnesses appear to have overlapping, duplicative knowledge and that the "vague, generalized" statements used to describe their potential testimony "are insufficient to

12

satisfy the significant burden on Defendant's transfer motion." (*Id.* at 5.) Realtime also argues that Quantum would not be inconvenienced by litigating in Texas because it has a significant customer in Richardson, Texas as well as an office there. (*Id.*) As to its own willing witnesses, Realtime identifies Deepika Pagala, an electrical engineer employee located in Plano, Texas (Tashjian Decl., ¶7) and four potential party witnesses in New York. (*Id.* at ¶¶2, 9.) Realtime argues that if this case is transferred to the Northern District of California, its New York witnesses will be required to travel twice as far as they would if trial is held in this District. (Doc. No. 39, at 6.)

In reply, Defendants argue that the fact Quantum has a significant customer with an office in Texas is inconsequential to the transfer analysis. (Doc. No. 40, at 1.) Defendants also deny that FAI has a second office in Texas. (*Id.* at 2.) Defendants assert that the two FAI employees in Texas "have no unique knowledge relevant to this case, and . . . have no reason to be witnesses in this action." (*Id.*) Defendants argue that their offices in Texas are the "sort of regional office that this Court has held do not weigh significantly in the transfer analysis." (*Id.*) Defendants argue that Quantum has sufficiently identified the relevant knowledge possessed by its proposed witnesses and emphasizes the shorter travel time from Irvine to San Jose than from Irvine to Tyler. (*Id.* at 3.) Defendants argue that Realtime does not explain how its employee, Ms. Pagala, has knowledge necessary to this case. (*Id.* at 3-4.)

As this Court has stated in previous cases, the fact that Realtime's New York witnesses have indicated that proceeding in this District will be more convenient for them is entitled to little weight. Because Realtime's named witnesses reside in New York, they "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1345. Accordingly, any added inconvenience to Realtime's witnesses of traveling to California, rather

than to Texas, should not be overemphasized. With respect to Realtime's electrical engineer employee, Ms. Pagala, who resides in this District, Realtime has not responded to Defendants' challenges regarding whether Ms. Pagala has relevant testimony. Indeed, beyond stating that Ms. Pagala "assists in the development and licensing of Realtime's intellectual property portfolio," Realtime has not indicated whether Ms. Pagala is expected to offer any relevant testimony in this case. (Tashjian Decl., ¶7.) The Court does not afford great weight to this potential Realtime witness, either.

It is troubling that FAI has not identified even a single potential party witness by name. Likewise, Defendants have not completely rebutted Realtime's challenge that FAI employees in Texas may have relevant knowledge. Although Defendants state in their motion that "none of FAI's witnesses or documents likely to have unique discoverable information are located" in this District (Doc. No. 33, at 9), FAI's declarations are unclear as to who may or may not be involved in testifying in this matter on behalf of FAI. However, again, Realtime has not challenged Defendants' assertion that "this case is really about Quantum's data deduplication technology and the location of Quantum's documents and witnesses should be given more weight in the transfer analysis than FAI's." (Doc. No. 33, at 2.) Given this unrebutted representation that Quantum's technology is the focal point of this litigation, the Court places more weight on Quantum's witnesses.

Quantum has identified five potential witnesses in San Jose, three in Irvine, and two in Australia. (Mintz Decl., ¶¶6-8.) While the Court does not factor the Australian witnesses in the analysis, *Genentech*, 566 F.3d at 1345, the Court does agree that it will be significantly less burdensome for Quantum's Irvine witnesses to travel to San Jose compared to this District. The Court further finds that Quantum has sufficiently identified the basis for the proposed testimony

14

of each of its potential witnesses. Even though some of these witnesses may ultimately have overlapping knowledge, Quantum has provided enough information to demonstrate at this stage that each of its named individuals may have relevant testimony in this case. (*See* Mintz Decl., ¶¶6-8.)

Realtime has one employee who resides in this District, but it is unclear whether she has any relevant knowledge related to this litigation. (*See* Tashjian Decl., ¶7.) Meanwhile, Quantum has submitted five willing witnesses who work in San Jose, California (Mintz Decl., ¶6) and would be "unnecessarily inconvenienced by having to travel away from home to testify" in this district. *PersonalWeb Technolgies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *4 (E.D. Tex. Mar. 21, 2013). In addition, Quantum has identified three individuals in Irvine, California (Mintz Decl., ¶7) who would be less burdened if this matter were to proceed in the Northern District of California. This factor weighs in favor of transfer.

### 4. Other practical problems

Practical problems include those that are rationally based on judicial economy. The existence of duplicative suits involving the same or similar issues may create practical difficulties that will effect transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*"Volkswagen III"*). Further, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'" *In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) (quoting *Volkswagen III*, 566 F.3d at 1351). The Court weighs this factor according to the situation that existed at the time the action was initiated. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (indicating motions to transfer venue are to be decided based on "the situation which existed when the suit was instituted."); *In re EMC Corp.*, 501 F. App'x 973, 975-76 (Fed. Cir. Jan. 29, 2013).

15

Defendants argue that this factor does not weigh strongly against transfer for two reasons. (Doc. No. 33, at 13.) First, Defendants argue that there is at least one patent in this case, U.S. Patent No. 9,054,728, with claims that have not yet been construed by this Court. (*Id.*) Second, Defendants note that there is a Realtime case pending against Apple in the Northern District of California with an overlapping patent. Defendants assert that "[g]iven the very early stage of the Apple case, that Court could hold one joint claim construction hearing for both cases." (*Id.* at 14.) Realtime notes that there are eight other cases pending before the Court in this District. (Doc. No. 39, at 10.) Realtime emphasizes the district court's experience with the patents-in-suit from prior and pending litigation. (*Id.* at 11.) Realtime also notes that this Court has recently construed the '728 Patent and asserts that there is no longer an overlapping patent in the Apple case because it was previously withdrawn from that matter. (*Id.*) Realtime states that "[t]he mere fact that currently there is one case pending in N.D. Cal.—which does not involve[] any overlapping or related patents—does not outweigh the significant judicial economy gains" from proceeding in this District. (*Id.* at 12.)

At the time the Complaint was filed, Realtime's case against Apple had only recently been transferred to the Northern District of California. *See Realtime Data, LLC d/b/a IXO v. Apple, Inc.*, No. 3:16-cv-02595 (N.D. Cal. May 13, 2016). Thus, at that time, that Court did not have substantial experience with respect to any of Realtime's patents, including family members of the patents-in-suit. On the other hand, at the time of the filing of this suit, there was at least some benefit to having the same judge handle related pretrial issues, including pretrial issues related to the four other Realtime cases filed in this District in February and June 2016. *In re EMC Corp.*, 501 F. App'x at 975-76; *see Realtime Data LLC v. Hewlett Packard Enterprise Co.*, No. 6:16-cv-86 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Savvis Comm'ns Corp.*, No.

6:16-cv-87 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Dell, Inc.*, No. 6:16-cv-00089 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Rackspace US, Inc.*, No. 6:16-cv-00961 (E.D. Tex. Jun. 29, 2016). Although this Court also issued a memorandum opinion and order construing claim terms in another set of Realtime cases with overlapping patents on July 28, 2016, the Court will not consider this in its analysis because it issued the Order seven days after the Complaint in the above-captioned matter was filed. *See Realtime Data LLC v. Actian Corp.*, No. 6:15-cv-00463, Doc. No. 362 (E.D. Tex. July 28, 2016); *see in re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). The Court concludes that this factor is neutral.

### B. Public Interest Factors

#### 1. Local interest in having localized interests decided at home

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Generally, however, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321; *Volkswagen II*, 545 F.3d at 318 (disregarding local interest of citizens who used the widely sold product within the transferor venue in a products liability suit). Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *Nintendo*, 589 F.3d at 1198.

Defendants argue that the Northern District of California has a strong local interest in the resolution of this litigation because Quantum is headquartered there and "developed substantial portions of the accused technology there." (Doc. No. 33, at 14.) Defendants further note that "while FAI's products were developed overseas, the accused *deduplication* functions were developed by Quantum and FAI is also headquartered in the Northern District of California."

17

(*Id.*)  Realtime responds that Defendants' argument should be rejected because California jurors would be biased towards Defendants.  (Doc. No. 39, at 13.)  Realtime emphasizes that Quantum has asserted that much of its technical documentation and source code is in Irvine and Australia, not in the Northern District of California.  (*Id.* at 12.)  Realtime also again raises the fact that FAI potentially has witnesses and documents in Texas.  (*Id.*)  Realtime further argues that its ties to this district date back to 2009 and that "it simply cannot be said that N.D. Cal. has a greater interest in this case."  (*Id.* at 12-13.)

The Court acknowledges that both Quantum and FAI have their U.S. headquarters in the Northern District of California.  However, this fact alone does not typically tip the scales in favor of transfer.  *Phoenix Licensing, L.L.C. v. Royal Caribbean Cruises Ltd*, No. 2:13-CV-1095-JRG-RSP, 2014 WL 7272640, at *5 (E.D. Tex. Dec. 22, 2014).  Further, because the development of FAI's products primarily occurred outside of the United States and Quantum has represented that "the majority of the technical development of the accused products currently takes place" in its Irvine office (Doc. No. 33, at 8), the Court does not believe this action calls into question the work and reputation of individuals in the Northern District of California to the same extent as other cases.  *Cf. In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012).  On the other hand, this District has at least some local interest given that Realtime has two offices and one employee here.  Ultimately, it is not clear that either district has a particularly strong localized interest, and thus finds this factor is neutral.

## 2. The Remaining Public Interest Factors

Both parties assert that the remaining three public interest factors are neutral. (Doc. No. 33, at 15; Doc. No. 39, at 13.) The Court agrees. The first public interest factor, administrative issues related to congestion, is speculative in nature and cannot alone outweigh other factors. *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). With respect to the third and fourth factors, both courts are familiar with federal patent law and there are no conflicts to avoid.

## IV. CONCLUSION

For the reasons explained above, relative ease of access to sources of proof weighs in favor of transfer; availability of compulsory process weighs in favor of transfer; cost of attendance for willing witnesses weighs in favor of transfer; practical problems, including judicial economy, are neutral; and all of the public interest factors are neutral. Defendants have met their burden of showing that the Northern District of California is "clearly more convenient" under the transfer factors.

Accordingly, Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 (Doc. No.33) is **GRANTED**.

**So ORDERED and SIGNED this 27th day of February, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE